Corporation of China, a People's Republic of China Corporation. I ask not to exceed 15 minutes per side. Mr. Hudson for the appellant. Good morning. May it please the Court. Paul Hudson on behalf of the appellant, Avick, and with me is my colleague, Matt Smith.  Thank you for having me. Your Honor, I'd like to reserve three minutes for rebuttal. Your Honors, this is a sovereign immunity appeal, and the question is whether a foreign state, under the Foreign Sovereign Immunities Act, can be forced to defend a lawsuit in Detroit, Michigan, on the grounds that either one, it's subsidiary engaged in commercial activity there, or two, it provided government and regulatory support and backing for the subsidiary's commercial activity. The controlling Supreme Court precedent holds that the answer to both parts of that question is no. We therefore ask the Court to dismiss Avick, and then remand the case to allow the plaintiff to pursue its claims against the other defendant in this case, Yubei, who was the commercial party to the deal, the party that the plaintiff actually dealt with, had two commercial contracts with, and had this alleged understanding or promise that the plaintiff would be paid no matter if this deal went through or not. Should we be looking at the allegations or the factual matter that was also submitted? Judge White, I think that sort of hits on the root error of the district court's decision, that this was a factual dispute, and I say that with due respect to the district court. So then don't we just send it back? I think that's an important question here. I think at a minimum we send it back for a factual resolution, but I think actually we have a legal issue here for the court. The record is the record, and we don't have a factual dispute in the sense of there is a fact in question that would give rise to, that would be commercial activity or not. What we have is a set of facts, a set of documents, and the question is whether those show commercial activity or not. And that's consistent with how the courts have treated this. I think the best discussion is in the Fifth Circuit's Ariba case, and the site there is 962 F. Sec. 528. And there they made clear that a remand isn't necessary unless there is a disputed fact that would give rise to the commercial activity. The rule is that discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination. So here we're not disputing a fact. We're just disputing whether it shows commercial activity or not. So I think an outright dismissal of AVIC is what we're asking for, and I think it's consistent with the case law. And the Ariba case, by the way, distinguished what this court did in the Gould decision back in 1988, and there the court did send it back for a remand because there there was a fact in question that if it was proven, would be commercial activity. And the Ariba court has a good discussion of that. There the issue was whether an agency of the French government had stolen trade secrets, and the French government denied that it happened. The plaintiff said it did, and the court said we just don't know. We need a remand to the district court. So you didn't submit anything. You're just relying on what they submitted, right? We submitted documents establishing that we're a foreign state under the Act, which creates the presumption of immunity. We also submitted a business license of this AVIC auto entity, which shows that it was created in 1985, and that's actually an important point because I think it demonstrates that the district court didn't do a facial examination. I'm sorry, didn't do a factual examination, because in the opinion of the district court said that AVIC auto was recently created in 2011, which is what the plaintiff alleged in the complaint, and that was an important. You didn't submit a counter affidavit or anything. No, we did not, and that's not a requirement in the rules. This is. No, but if you look at their factual allegations in the affidavits, they say that AVIC, do you say eBay? I say eBay. Some people say eBay. But the allegation is that both appointed Global as the contact and authorized them to start the process of negotiating or approaching them. The allegations certainly say that in the complaint, but I think what the documents show is that these were meaningfully distinct entities, and both in form and in substance. In form, it's explained to the sellers that eBay is a subsidiary of AVIC, and then in the documents they clearly delineate the differing roles between the two entities, that eBay was obviously going to be the actual commercial purchaser, the acquiring company, the company that was going to assume these UAW contracts. But AVIC was funding it. Yes. The documents show that both AVIC had some role in this, that AVIC was funding it. And AVIC had an approval role. And having some approval role, and none of that. At this stage of the proceedings, I mean, isn't that enough? It's not enough, Your Honor, and the Supreme Court has made clear that when we're asking whether to impute a subsidiary's contact, commercial activity to the foreign parent's sovereign, it's a tolerably high burden. It's fraud or other exceptional circumstances. It's the rare or exceptional case, as the Supreme Court has said. And it's really the control exercised by the sovereign has to be so dominant that they're not meaningfully distinct entities. That's for piercing the veil. Yes. As opposed to AVIC having its own responsibility. Correct. And so there's two parts to the allegation. Although I'll submit, Your Honor, that their claims depend on that agency relationship. They have two claims against AVIC. One is promissory estoppel. One is unjust enrichment. Pure agency theory. They allege in the complaint that AVIC acting through UBEI, you know, made these promises that they'd be paid no matter what. I mean, that's a pure agency. Okay. To me, there's a difference between that type of agency and piercing the veil. I mean, piercing the veil is, I agree, that's a very high standard. But you can have agency where the parent company is actively involved as opposed to, you know, they're sitting someplace and having nothing to do with it, and then you go behind the relationship and pierce the veil. What the Supreme Court's cases and cases throughout the country make clear is that the common thread through all of this is that in cases where we have commercial instrumentalities and then we have a sovereign parent, these are only the exceptional cases where we're going to infringe upon the sovereign parent's sovereign immunity. And I think that is a veil-piercing analysis. And so if we separate out sort of the UBEI acts, and I'll submit that there's nothing in the record that shows that sort of level of fraud or other exceptional circumstances, no meaningfully distinct entities. And then what we have is, okay, what were AVIC's own acts? And AVIC's own acts were, you know, quote, AVIC's background is a state-owned enterprise owned by the state council, gives it priority in obtaining Chinese government approvals, completing the deal expeditiously. AVIC has strong government influence. We don't see any approval obstacles. And that's, as the Supreme Court said in Nelson, is, you know, not only powers exercised by private citizens. Those are sovereign-type powers. And so if we have the UBEI activities, which can't be imputed to AVIC, and then we have AVIC's activities, which the documents themselves, and these were the documents that the plaintiffs selected as their best evidence of commercial activity, show sovereign-type activities by AVIC. Wasn't AVIC involved in the decision of how much to bid initially? I'm not sure the documents show that. The bid letter is clearly coming from UBEI, this $350 million purchase price. It's all UBEI. All the bid letters are UBEI. The one fact is GM asked UBEI to confirm that AVIC was supporting this deal, that the Chinese government was supporting this deal. You know, clearly GM was concerned that they wanted this thing to go through and that there weren't going to be approval obstacles, so they asked for UBEI to confirm that. And so another AVIC electromechanical representative comes and confirms the support for the transaction. But I think it's important, Judge White, that these types of, you know, whether they're giving approvals, whether they're financially backing the deal, the courts in the Transamerica case and the Walter Fuller case, none of those factors were sufficient to hold the – But if AVIC appointed Global as its contact and involved itself in that relationship, that's enough, isn't it? And there isn't evidence in the record that that shows that. It's in an affidavit, and you didn't submit a counteraffidavit. We have the documents that they submitted, and so we have sort of conclusory allegations. We have, you know, somebody saying that AVIC was, you know, the ultimate decision-maker. But even that, I mean, the cases have shown that a sovereign foreign state parent is not required to be utterly quiescent in the affairs. And even when these sovereign entities are engaged in the daily day-to-day activities, that hasn't been sufficient to hold them for commercial activity. And that's especially true here. I mean, they have the commercial party in this case that they can proceed against. And in this case, it should be, you know, even more exceptional that we would let them tie the sovereign parent into this case. Is eBay a viable vendor? Yes, by all indications. I mean, it's a massive industrial entity. It's a steering system supplier. So there's no concern here that there's a collectability issue or that, you know, AVIC is using this company as sort of a shell to hide behind it so it can gain its sovereign immunity. Those are the type of cases where you would let the sovereign come in when it's just clearly this sovereign is playing games. Here, nothing of the sort. They're going to have whatever recovery they're going to get. If they have claims, they can assert them against eBay. And they just haven't met any type of burden to prove that AVIC should be brought into the case. And then on the question of AVIC's involvement, doesn't that go to the merits as much as it goes to jurisdiction? And in that situation, isn't the court supposed to just take the allegations as true? No, the court's made clear that you don't take the allegations as true and that this is sort of a unique circumstance where the immunity determination needs to be made early in order to protect sovereign immunity. So it's not where we just— But say that if the immunity determination is wrapped up in the merits, you don't make that determination early? I don't believe so, Your Honor. And I think what the cases say is, you know, if there's a jurisdictional fact that the parties are disputing, then you have very limited discovery on that question, and we don't have that here. So in our view, this issue is ripe for adjudication here. Thank you, Your Honors. I'll reserve the balance of my time. Thank you. Good morning, Your Honors. May it please the Court. The issue is whether the district court properly found Avick is subject to the jurisdiction under the first prong of the commercial activity exception of 1605A. Well, isn't there a preliminary issue about how the court went about it? The court clearly treated it as a facial check, right? I'm sorry, I didn't hear the end. As a facial challenge to jurisdiction as opposed to a factual challenge. It did, Your Honor. That is correct. And isn't there an error? I don't believe so, Your Honor. In this case, in order for there to be a factual determination, the defendants would have had to come up with some type of evidence that would have taken them out of the commercial activity exception. That did not happen here. They maintained the burden of persuasion under O'Brien, under Gould, under DRPF v. Republic of Bulvarian, which is also a Sixth Circuit 2010 case. And because that did not happen and there was no counter-affidavit, there was no additional documents, there was nothing that made Avick come to the point where its claims for immunity were past the burden of persuasion. But it relied on the documents provided by you, and it changed the nature of the jurisdictional challenge to saying, look, look at all the material, the supporting material that they're giving you, not the complaint. Look at their actual support, and it's not showing that there's jurisdiction. But it was focusing on the actual facts. Your Honor, what the defendants did is they took documents and highlighted certain portions. What they didn't do is meet their burden, and they didn't do it because, number one, the affidavit... I thought under O'Brien their burden, their initial burden, was to show that they are, in fact, a foreign state, and nobody is challenging that that was met. At least I don't think you're challenging that. Am I right? Correct. And then the burden shifts to you to show that there's some exception to the presumed immunity for a foreign state, and you seem to be saying that it was their burden to show that there was no exception. Your Honor, we came forward with evidence that this is a commercial activity, and because we showed it was a commercial activity, the burden of persuasion shifts back to AVIC to show that it was not. Doesn't that sound a lot more like a factual than a facial challenge? Your Honor, I don't believe so because of the fact that here we have very specific cases with regard to what a commercial activity is, and a commercial activity is judged by its nature of the course of conduct of a particular transaction rather than by reference to its purpose. What AVIC wants to tell you is that they are a governmental entity, and therefore they're entitled to immunity. But they're not telling you that because of the fact that their purpose was to engage in commerce in the United States, that it actually is the nature we need to look at. That is specific from 1603D. And in the Republic of Argentina v. Westover, the Supreme Court said that when a foreign government acts in a manner of a private player and not as a regulator of the market, the foreign government's actions are commercial under the Foreign Sovereign Immunity Act. In addition, Your Honor, the essence of a complaint is commercial, and we cannot lose sight of the ultimate issue of whether the true essence is commercial in a complaint, and that's under this Court's O'Brien case. A foreign state engages in a commercial activity when it acts in a manner of a private player, which is distinct from the powers of a particular sovereign. That's Saudi Arabia v. Nelson, U.S. 1993 case. And claims that allege property damage, breach of contract for goods or services, product liability, copyright infringement, and indebtedness, yet unpaid in other transactions are theories whose true essence is commercial. That's O'Brien. If you even look at the Act, Your Honor, these are specific cases where engaging in these commercial activities are deemed to be commercial. Therefore, we supported our analysis and what we needed to do to show that this was a commercial activity. What AVIC didn't do is come back with the burden of persuasion that it was not. What do you have to show concerning AVIC as an actor as opposed to UVA? I'm sorry, how do I show that? No, what do you need to show? That AVIC acted as an agent? That their involvement was commercial as opposed to UVA's. Well, Your Honor, their involvement is shown, if we're going outside of the allegations of the complaint, because the complaint was very specific, that AVIC did the things necessary to enter into this relationship. Like what? It took control over every aspect. AVIC was the backer. It made the decisions. It worked with the UAW. It had to make the determinations with regard to salaries. It did every single thing. There was an immense amount of control. But as we stated in the complaint... But if we're just looking at the complaint, we're doing a facial analysis. Correct. But what evidence is there? So you're saying that the complaint is all it takes and the burden is entirely now on AVIC to show that what is stated in the complaint is not so. Your Honor, under the complaint, we have established that there was an exception to the Foreign Sovereign Immunity Act sections. What is the evidence that there's an exception? So getting into the factual analysis of the evidence of the exception would be the fact that it's a commercial activity. There's nothing that we can do that wouldn't make us know that this is a business, is a commercial activity. Because of the fact that the very nature, as stated in the reports, the very nature of entering into an engagement for profit makes this a commercial activity. Whether or not... So UBEH certainly did that, but we're not worried about UBEH. I'm trying to figure out where the evidence is that AVIC did that. I mean, I know you say so in the complaint. So going beyond the complaint, Your Honor, if that's what you're asking me to do, I can point you to specific things. First of all, the affidavit indicates that there were communications, meetings, activities, contacts, et cetera, with regard to this business relationship. The document... With AVIC? I'm sorry? That was my question. Contacts between whom? Between AVIC, GTI, UBEH, GM, Delphi Steering. There were the UAW, the employees of Delphi, which was in next year. There was communications and activity by AVIC all the way through. And, Your Honor, when the defendants, AVIC in this case, went and showed the self-selected documents and highlighted different portions, what they did point to were documents 36, 37, 38, 39, 40, 41, 42, 48, 49, 51, 52, and 54. Interestingly, you'll see that on page 28 of the exhibit, it's where AVIC is coming to the United States for a visit for the deal, and it's by Mr. Wong Wei. Then you have the issue on May 4, 2010, page 30 of the exhibit, which also was not disputed, which it states, Upon return from the U.S., I reported our discussion about next year's management compensation package to the AVIC leadership. The key message in my report was the importance of retaining the current management and necessity of offering a market competitive compensation package tied to the management team's contribution during the acquisition and for business performed post-acquisition. This message was well received by AVIC leadership, but again, AVIC is not in a position to give a firm, any firm written response within a two-week time frame. It continues on. We have contacted two top executive compensation firms. We are going to do this. There's also exhibit number 32, which shows references to AVIC that wasn't discussed by AVIC in their motion. We have page 36, where it says, AVIC and UB would very much like to have Mr. Wang meet Steve Gursky. AVIC would like to move quickly. On exhibit number B, page 38, Central to AVIC and UB's corporate culture is a harmonious relationship between its owners, management, and workers. If UB slash AVIC is successful in the acquisition, our goal would be to foster this relationship. To this end, AVIC and UB intend to honor all existing UAW labor agreements, working closely with UAW to solidify a strong relationship. This acquisition will be a landmark deal for China and AVIC. AVIC's goal is to create an international firm with international manufacturing footprint, led by you and your management team. Who was that sent to? This was sent to Mr. Reminar of Nextair. In addition, the PowerPoint presentation that was given that's also part of exhibit B, you will notice that the logo is AVIC's all the way through. This isn't UB acting. This is AVIC acting, saying, we are coming in and we're going to buy this company. Here's why we're your best strategic partner. Here's how our alliance is going to be. AVIC is doing everything. They are not just acting through UB. They are acting on their own. And in addition, Your Honor, a very important point is that the defendants seem to be indicating that Michigan law requires fraud for a piercing of a corporate veil. And while we have a much stronger case in piercing the corporate veil, that is not correct. Recently, this court on July 10th even indicated in its opinion that piercing the corporate veil and upholding a veil-piercing claim does not need fraud. That is the case of DAGS 2 versus Huntington National Bank. That's this court's opinion of July 10th. And it deals with the issue of apparent versus subsidiary in the context of the protection of the corporate form. And the number on that? The number is 14-1853. So, Your Honor, with regard to the commercial activity, I think that it's very clear that the fact that they're acting for profit and that they're acting in the commercial market brings them within the commercial activity exception. The burden was on AVIC to show that they were not doing that. They failed to meet that burden because they didn't provide any evidence. They didn't counter the affidavit. They did not provide any documents, any different. What they simply did is took select documents and highlighted different things, obviously taking out many of the documents that actually helped establish more of the fact that AVIC was connected. And that was done on purpose. I'm still struggling with the idea that even though they did that on your documents, that is to say they didn't provide their own affidavits or whatever, I'm still struggling with why that isn't sufficient to make it clear that this is a factual, not a facial challenge that needed actual development. And, Your Honor, if it did need actual development, then they waived the right to do so at this point. Well, wait a minute. I mean, even if this were a summary judgment context, if the fact issue can be found in whatever evidence is submitted by any party, any party can take advantage of that. I mean, that's the whole point here. I mean, if the documents you submitted show that there's a factual dispute, then it's not necessary that they have done anything else. And, Your Honor, the factual dispute... Isn't that correct? Well, Your Honor, to come forward with the information has been passed. They should have brought the information now. But, I mean, if your information shows that there is a factual dispute, then it's not necessary that... I mean, you can't fault them for not filing something. They may be stuck with what you filed at some point, but, I mean... I guess my concern is if what you filed has been reviewed by them and they say, you know, look at this, this, this, and this. This is enough to show that there's a factual dispute. Why isn't it at that point that the district court in determining jurisdiction has to say, no, this is a factual attack on jurisdiction,  I think, Your Honor, because no matter what they want to claim is a factual issue isn't there. And that goes to the merit... Well, that doesn't go to some formalistic filing or submission of evidence requirement. That goes to the issue of whether it's correct on the record to determine that there is a factual dispute. But, Your Honor, the factual dispute with regard to what? Because the claim that it's not a commercial activity, I don't think that there can be a factual dispute on that. The judge was very clear that the fact that they're engaging in the commercial activity, whether or not it's because they're claiming to be sovereign or a foreign entity or their purpose is to help the Chinese government doesn't matter. The statute specifically requires that it be the nature and not the purpose and to stay maintained upon that course in determining whether or not it's a commercial activity. So I don't think there's a question of fact with regard to the commercial activity. I will point out that, in addition, that they are not a sovereign, Your Honor. Under the Act, they are a foreign state. They're not entitled to the same type of benefits that they are if you're a sovereign. And that's pointed out in different sections, and it has a very concrete analysis with regard to venue and jurisdiction, damages under 1608, ex-appropriation under 1610, et cetera. But, Your Honor, based on their claim that there's a factual dispute, the factual dispute that they're claiming is that it wasn't a commercial activity, that there was some type of agency. There was a claim that they acted independently. We don't need agency. And if they want to show— But, you see, these are different questions. I think that what we're trying to get at is that a separate issue is, was this a facial or a factual challenge? It's a different question what the consequence of that is and whether there's enough and what the answer should be, assuming it's a factual challenge. And it may be that it's a factual challenge and they had their chance to submit more facts and didn't, so this is the record. And it may be it's a factual challenge with no disputed issues of fact, which is what they're contending. And I think you are, too, that there are no disputed issues of fact, at least on this record. But I think what we're driving at is the initial question of whether this is a facial or factual challenge, meaning are they challenging that you're not alleging jurisdiction or are they saying, look, look at the facts that they are giving you to say that we're engaged in commercial activity and it doesn't establish that. It established that our subsidiary is engaged in commercial activity. But then what the judge has to do is look at all the materials and say, okay, there doesn't seem to be a disputed issue of fact. These are the facts and that's enough. But it doesn't look like that's what he did. I see my time is up. May I answer your question? Please do. With regard to the issue of how you're explaining it, that goes to the actual elements, which is not necessary for a determination of whether or not we get to sue AVIC under the Foreign Sovereign Immunity Act. That goes beyond that and that goes into the elements of what we will prove, which is not to be determined at this stage. And the courts are clear on that. In addition, if this court finds that there should be, that it cannot tell from the record, and therefore this court cannot do the analysis, then if we are sent back down and remanded, we should be entitled to discovery on these issues. We have not had discovery yet. That's part of what we've been saying, that there isn't. I mean, it doesn't sound like, it does sound like everybody's saying there aren't any factual disputes and then you're saying, but there are factual disputes, although you're not really acknowledging that. But clearly there hasn't been any discovery, and that, I think, is what we have to try to figure out. Could this really have been done appropriately, accurately, and properly by the district court without any discovery based on what was in front of him? And if we go to the issue of a factual dispute, it's going to be on their indication, were we an agent or not? And I think that was AVIC an agent, you being an agent for AVIC, and I think that, Your Honor, on that alone, there's no question. We're entitled to allege that. We have alleged that. And we saw that under Bianco from the United States Supreme Court, we have what it takes to have an agency relationship. We have the OBB case that just came up on the MBAC opinion that takes agency to even a lesser level, and we have the Michigan case that talks about a parent subsidiary and that there can be an agent in that situation. We allege specifically that AVIC acted on its own. Their claim that they want to say that they only acted as an agent of UB is not correct, Your Honor, and I don't think that the facts of this case establish that based upon the complaint, based upon the affidavits they did not dispute, and based upon the documents that actually show that. And I don't think we need to get there under the commercial activity exception to get sovereign immunity, the exception of sovereign immunity under the commercial activity. Thank you, Counsel. Thank you. Your Honors, I'd like to address the burden of proof issue. It's a disputed issue, and there's a circuit split. There's an intra-circuit split on that question of who has the burden to prove commercial activity or the lack of commercial activity. I'll submit, and this is a strong statement, that if we were starting from just the statute and the Supreme Court's precedent, that no court would have imposed a burden on the sovereign to prove lack of commercial activity. The statutory text itself says that a foreign state shall be immune, except as provided in exceptions. The Supreme Court has said under the Act, a foreign state is presumptively immune, semi-colon, unless a specified exception applies. A federal court lacks subject matter jurisdiction. If a sovereign is presumptively immune, that can't mean that it has a burden to prove anything. That's the opposite of a presumption. What there's been in the circuits is, frankly, a classic snowball of precedent, and it started in Gould. The court said ordinarily the burden is on the plaintiff to prove jurisdiction. However, the legislative history here envisions a burden-shifting regime. The Supreme Court has sort of knocked that out. The legislative history said that was an affirmative defense, that sovereign immunity was an affirmative defense, and therefore that's why the sovereign has to prove immunity. The Supreme Court in Verwinden said that. There is a distinction between the sovereign immunity as an affirmative defense and there being some kind of a burden on the sovereign once. I mean, obviously the sovereign is presumed, but somebody, if it's not a sovereign state, it's merely an entity that has the embellishments of sovereignty. If the sovereign doesn't have to show something in that regard, it's going to be a little hard for anybody to show it, seems to me. So it can't be that there's no burden at all on the… And I think if there is some burden, it's just to establish that you're a foreign state under the Act. But the Section 1608E of the statute says that even if the sovereign doesn't show up to court, that a district court can't enter a default judgment. But what it says is if the sovereign state, if the foreign state… Foreign state, right. And there's a distinction between the state and an entity that is a state, entirely state-owned entity that would be then presumptively immune. The foreign state is defined collectively to be the sovereign and its agencies and instrumentalities. So if a foreign state, if a party did not appear in court, a district court would have to determine, one, that it's not a foreign state, or if it is a foreign state that, quote, cannot enter default judgment, quote, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. Well, if a sovereign doesn't have to show up and prove anything, that means it doesn't have a burden. But we got beyond that in this case, didn't we? I don't think we have a clear statement in this case of whose burden it is to prove commercial activity or not. But we got beyond the question of whether this is a foreign state, the presumption. Yes. Nobody's, well, I think we've gotten past denying that the presumption applies. Yes. But their allegation is that they were approached by UBE regarding a clearly commercial transaction. They entered into an agreement with them. And then UBE, no, it's, what is it, AVIC? And then AVIC came along and stepped in and became part of that transaction. And that AVIC did it as a commercial entity involved in a commercial transaction, not as a regulator back home or helping out back home, but was actively involved in this commercial transaction. And that's the allegation. And that is somewhat supported by their documents. And they've carried their burden at that point. And your response has been, no, no, no, look at their documents. It doesn't establish what they need to establish. And so that's, I mean, that's where we are. But the problem that I'm seeing is that you don't seem to be arguing that this does not show a commercial transaction. I think what you're arguing is the merits, that look at this. This isn't enough to impose liability on us for that contract. And that's a different issue, to me it is, than jurisdiction. This was clearly a commercial transaction. And the case law is clear that foreign state parent entities can have some role in these commercial transactions. In Transamerica, it was leasing shipping equipment. And, you know, there's aircraft sales. Foreign state parents are allowed to have some role. And, yes, they've alleged that AVIC had some role in this. But the documents they have actually produced show that AVIC's role was sovereign and not commercial. That's our position in this case. And these communications directly with? There are none. Okay, what about these exhibits that? Every exhibit in there, there's not one that's a communication from AVIC to Global, from AVIC to the seller. It's all UBEI to the plaintiff. It's all UBEI to the sellers. So who is that gentleman who she referred to? I think he's the one who, the gentleman who swore the affidavit. No, the one that said that. Yeah, no, that was a UBEI representative, clearly identified in the signature block as a UBEI representative. UBEI was signing all these. Who then went back and reported to the AVIC board? Perhaps. I'm not sure that's in the documents. But, yes, I mean, there's evidence in the record that AVIC has some role. That would be an appropriate parent company role even, you know, that should go to the parent company's board of directors. And, you know, here it's not just normal parent-subsidiary relationship. It's sort of, you know, veil-piercing on steroids where it's a foreign state involved. So I think the record does not show that AVIC engaged in commercial activity. We think a dismissal outright is appropriate because we have this set of facts, and the legal issue is whether that shows commercial activity or not. Just on the question of what kind of discovery would be permitted on remand, the case has been very clear on that, and I mentioned it earlier, that this would not be, you know, the plaintiff gets to root around in the high levels of the Chinese government to see what kind of relationships are there. They haven't alleged specific facts to support that. We don't have a factual dispute about a specific occurrence or not that would be commercial activity. So they don't need further discovery on this. This is their best evidence of commercial activity, and it's not commercial activity. Thank you, Counsel. Thank you, Your Honors. This will be submitted.